**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WILLIAM DUANE STIVERS,**

                **Plaintiff,**                5:11-cv-1019
                                                         (GLS)

                    **v.**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Olinsky Law Group | HOWARD D. OLINSKY, ESQ. |
| 300 S. State Street | |
| 5th Floor, Suite 520 | |
| Syracuse, NY 13202 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | TOMASINA DIGRIGOLI |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff William Duane Stivers challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Stivers' arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

### II. Background

On May 9 and May 22, 2008, Stivers filed applications for DIB and SSI, respectively, under the Social Security Act ("the Act"), alleging disability since November 1, 2005. (*See* Tr.[1] at 60-61, 132-44.) After his applications were denied, (*see id.* at 63-70), Stivers requested a hearing before an Administrative Law Judge (ALJ), which was held on December 18, 2009, (*see id.* at 34-58, 75). On January 11, 2010, the ALJ issued an unfavorable decision denying the requested benefits, which became the

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 10.)

Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-24.)

Stivers commenced the present action by filing his Complaint on August 25, 2011 wherein he sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (*See* Dkt. Nos. 8, 10.) Each party, seeking judgment on the pleadings, filed a brief. (*See* Dkt. Nos. 13, 14.)

### III. <u>Contentions</u>

Stivers contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (*See* Dkt. No. 13 at 7-19.) Specifically, Stivers claims that the: (1) ALJ failed to properly develop the record; (2) residual functional capacity (RFC) determination is unsupported by substantial evidence and the product of legal error; (3) ALJ improperly assessed his credibility; and (4) step five determination is unsupported by substantial evidence (*See id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (*See* Dkt. No. 14 at 11-22.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (*See* Dkt. No. 13 at 2-6; Dkt. No. 14 at 2-7.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Developing the Record

First, Stivers contends that the ALJ erred by "failing to obtain any treating source medical records or a treating physician opinion of [his] functional limitations." (Dkt. No. 13 at 7-9.) The Commissioner counters, and the court agrees, that the ALJ properly developed the record. (*See*

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the Regulations governing SSI are omitted.

4

Dkt. No. 14 at 11-12.)

While the ALJ has an affirmative obligation to develop the administrative record, her duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010); *see also* 20 C.F.R. § 404.1512(d) (stating that, generally, a complete record contains a "medical history for at least the [twelve] months preceding the month in which" the claimant files his application). Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make her determination based upon that evidence. *See* 20 C.F.R. § 404.1520b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

Here, Stivers completed disability paperwork and reported receiving treatment for his impairments in 2007, from two medical sources, whose records the Commissioner obtained. (*See* Tr. at 167-169, 242-97.) Thereafter, at the December 2009 administrative hearing, Stivers testified that he did not receive any medical treatment for his impairments from

5

November 2005, his alleged onset date, until 2007. (*See id.* at 40.) He further explained that he last received medical treatment in 2007. (*See id.* at 44.) Stivers argues that remand is required because the record lacks treatment notes from treating physicians Gaskill and McKenzie, whom he claims he began treatment with in May 2007, as well as a May 2008 chest x-ray.[3] (*See* Dkt. No. 13 at 8.) Contrary to Stivers' contention, the record before the ALJ included treatment notes from Dr. Gaskill, who noted, in June 2007, that Stivers was "not seek[ing] care anywhere else." (*Id.* at 288; *see id.* at 265, 286-87, 289.) Further, Stivers, who was represented by counsel, failed to bring to the ALJ's attention his treating relationship with Dr. McKenzie, and failed to submit any additional treatment records to the Appeals Council. (*See id.* at 1-6, 36-37, 229-41); *see also Chandler v. Comm'r of Soc. Sec.*, No. 11-CV-152, 2012 WL 1935182, at *8 (N.D.N.Y. May 29, 2012) (explaining that the ALJ's duty to develop the comprehensive record is greatest when claimant is unrepresented).

In any event, in addition to obtaining the 2007 medical records from Stivers' two reported medical sources, the ALJ obtained internal medicine

---

[3] As Stivers testified that he had not seen a doctor since 2007, the court assumes he is referring to a May 2007 chest x-ray. (*See* Tr. at 44.) Indeed, the record contains a May 2007 chest x-ray which revealed "no active cardiopulmonary disease." (*Id.* at 259.)

and psychiatric consultative examinations, the results of which she relied on in making her determination. (*See* Tr. at 15-16, 299-307.) Based on this evidence, the court concludes that the ALJ's development of the record was sufficient to render a disability determination. *See Rosa*, 168 F.3d at 79 n.5; *see also* 20 C.F.R. § 404.1513(b)(6) (stating that the lack of a medical source statement from a treating physician will not, by itself, make the record incomplete).

## B. <u>Residual Functional Capacity</u>

Next, Stivers argues that the ALJ's RFC determination is not supported by substantial evidence and the product of legal error. (*See* Dkt. No. 13 at 9-14.) Specifically, Stivers contends that the ALJ: (1) erred in weighing the opinions of consultative examiners Kaylani Ganesh and Jeanne Shapiro; (2) improperly afforded some weight to the opinion of a disability analyst; (3) failed to apply the psychiatric review technique; and (4) failed to evaluate his abilities on a function by function basis. (*See id.*) On the other hand, the Commissioner argues that the ALJ properly determined Stivers' RFC and her determination is supported by substantial evidence. (*See* Dkt. No. 14 at 12-16.) Again, the court agrees with the Commissioner.

7

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ determined that Stivers could perform light work, limited to lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently. (*See* Tr. at 14.) She further concluded that Stivers required the ability to alternate between sitting and standing at will, and could only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (*See id.*) Stivers could never climb ladders, ropes, or scaffolds. (*See id.*) Finally, the ALJ determined that Stivers could "sustain attention and concentration to unskilled work, but not complex work, and [could] deal with changes in the routine work setting." (*Id.*)

Initially, it is clear that the ALJ properly provided a function by function assessment of what Stivers could or could not do. (*See id.* at 14.)

With respect to the opinion evidence, the ALJ afforded "great weight" to the opinions of Drs. Ganesh and Shapiro. (*Id.* at 15-16.) Stivers complains that Dr. Ganesh's opinion was vague as she opined that Stivers had no limitation in his ability to sit or stand, but then stated that he "should avoid prolonged sitting or standing because of [his] history of phlebitis and pulmonary embolism," and merely indicated that Stivers' was "moderate[ly]" limited in his ability to walk, climb, lift, carry, push, and pull. (*Id.* at 306; *see* Dkt. No. 13 at 10.) However, Dr. Ganesh's opinion was supported by Stivers' musculoskeletal, neurological, and extremities examination results, which were mostly benign. (*See* Tr. at 16, 303-06.) Moreover, the ALJ properly relied on Dr. Ganesh's explanation that Stivers' medical history called for greater limitations than the results of the examination indicated. (*See id.*) Clearly, the ALJ's RFC determination is supported by Dr. Ganesh's findings and opinion. (*See id.* at 14-17.)

Stivers' argument that Dr. Ganesh failed to render a complete opinion by omitting any mention of his ability to handle objects, hear, speak, and travel is absurd. (*See* Dkt. No. 13 at 10.) The regulation he relies on alludes to the consideration of certain activities by consultative examiners "such as sitting, standing, walking, lifting, carrying, handling

9

objects, hearing, speaking, and travel." 20 C.F.R. § 404.1519(c)(6). However, it is readily apparent from Dr. Ganesh's report that Stivers had no physical deficits in his ability to use his hands, hear, speak, and travel. (*See* Tr. at 303-06.) Indeed, Dr. Ganesh found that Stivers' hand and finger dexterity were intact and grip strength was 5/5, and opined that Stivers suffered no limitations in the use of his upper extremities. (*See id.* at 305-06.) Further, Stivers never alleged any limitations in his ability to hear, speak, or travel.

    Dr. Shapiro conducted a psychiatric evaluation of Stivers and opined that he could understand and follow simple instructions and directions and perform simple and complex tasks, with supervision and independently. (*See id.* at 299-302.) According to Dr. Shapiro, Stivers was capable of maintaining attention and concentration, learning new tasks, making appropriate decisions, relating and interacting appropriately with others, and dealing with some stress. (*See id.*) However, she noted that Stivers "may not always feel motivated to regularly attend to a routine and maintain a schedule." (*Id.*) Stivers takes issue with the ALJ's failure to include in her RFC determination a limitation with respect to Stivers' ability to maintain a routine and schedule. (*See* Dkt. No. 13 10-11.) This argument

10

is meritless, as the results of Dr. Shapiro's examination as well as her medical source statement support the ALJ's RFC determination. (*See* Tr. at 300-02.) Further, the RFC determination was supported by Stivers' reported activities of daily living, which included caring for his personal hygiene, cooking, light general cleaning, laundry, shopping, managing money, driving, watching television, listening to music, mowing the lawn with a riding mower, and talking to friends and family, whom he reported getting along with well. (*See id.* at 301-02.) In addition, medical consultant R. Altmansberger opined that Stivers' mental impairment was not severe under the regulations. (*See id.* at 314-27.) Thus, the ALJ's conclusion that Stivers was not limited in his ability to maintain a schedule is amply supported by the record.

Stivers' contention that the ALJ erred in affording "some weight," as opposed to no weight, to the opinion of the disability analyst is, simply put, immaterial. (Dkt. No. 13 at 11-12.) Semantics aside, the ALJ correctly identified that it was not a medical opinion and crafted an RFC determination that was far more restrictive than the disability analyst's report. (*See* Tr. at 16; *compare id.* at 14, *with id.* at 308-13.)

Finally, Stivers argues that the ALJ failed to provide a more detailed

11

assessment of his mental RFC at step four than was contained in her analysis at step three, as she did not supply a complete function by function analysis of his mental limitations. (*See* Dkt. No. 13 at 12-13.) An ALJ's determination of a claimant's mental functional limitations must reflect her application of the "special technique" set out in 20 C.F.R. § 404.1520a(c)(3), which requires the ALJ to make a specific finding regarding the claimant's functional limitation with respect to four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." The mental RFC assessment used at steps four and five of the sequential evaluation process requires the ALJ to, among other things, engage in a more detailed assessment of various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in § 12.00 of the Listing of Impairments. *See* SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996).

Here, the ALJ properly applied and documented the "special technique" in evaluating Stivers' mental impairments at step three and concluded that Stivers suffered mild limitations in activities of daily living and social functioning, but moderate difficulties in his concentration,

12

persistence, or pace. (*See* Tr. 13-14.) Further, the ALJ explained that her RFC assessment, which she was required to complete in light of her finding that Stivers' severe mental impairment did not meet or equal a listed impairment, "reflects the degree of limitation [that she] found in the . . . mental function analysis." (*Id.* at 14.) Thus, following her evaluation of Stivers' mental impairments in the four broad functioning areas at step three, the ALJ engaged in a more detailed assessment of his mental RFC at step four. (*See id.* at 14-17.)

Specifically, the ALJ considered, among other things, Stivers' specific allegations of feeling sad and useless, and lacking motivation to try things. (*See id.* at 14-15.) She also considered the medical and other evidence related to those limitations and their effects, including the report of Dr. Shapiro which detailed Stivers' medical history, mental status examination, and current daily functioning, and the opinion of Dr. Altmansberger. (*See id.* at 16, 299-302, 314-27.) Further, the ALJ took into consideration Stivers ability to continue working after he alleged his depressive symptoms began, and his lack of mental health treatment. (*See id.* at 17.) Based on Dr. Shapiro's examination and opinion, the ALJ concluded that Stivers can sustain attention and concentration to unskilled, but not

13

complex, work, and deal with changes in the routine work setting. (*See id.* at 14, 16-17.) In sum, the ALJ properly relied on substantial evidence in the record to assess Stivers' mental condition pursuant to the psychiatric review technique.

## C.    **Credibility Determination**

Stivers also argues that the ALJ failed to apply the appropriate legal standards in assessing his credibility. (*See* Dkt. No. 13 at 14-17.) According to Stivers, the ALJ: (1) failed to consider Stivers' reasons for not seeking treatment for his impairments; (2) drew inappropriate conclusions from his ability to drive a vehicle; (3) failed to consider the frequency, duration, and intensity of his symptoms; and (4) erroneously stated that he did not complain of breathing problems to Dr. Ganesh. (*See id.*) According to the Commissioner, the ALJ properly evaluated Stivers' credibility. (*See* Dkt. No. 14 at 17-18.) The court agrees with the Commissioner.

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the

14

extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness, and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ found that Stivers was not fully credible. (*See* Tr. at 16.) The ALJ noted Stivers' limited treatment since his alleged onset date and explained that, despite his financial constraints and frustration with the healthcare system, Stivers' lack of "greater effort to obtain emergency room or hospital care, or free clinic care" over the four year period

15

undermined his claims of disability. (*Id.* at 17.) Thus, the ALJ properly drew inferences about Stivers' failure to seek or pursue regular medical treatment, after first considering the explanations that he provided for his lack of treatment. *See* SSR 96-7p, 61 Fed. Reg. at 34,487. In addition, the ALJ noted that Sitvers continued to drive, despite his allegations of difficulty driving due to limited grip and feeling in his hands. (*See id.* at 17, 41, 43-44, 47, 179, 299.) Again, the ALJ properly considered Stivers' statements about the extent of his functional limitations and discounted them based on their consistency with other information in the case record. *See* SSR 96-7p, 61 Fed. Reg. at 34,486. The ALJ also noted Stivers' testimony that he left his seasonal job at the end of the season, not because of medical impairments. (*See* Tr. at 17, 39-40.) Further, the ALJ discounted Stivers' allegations of depressive symptoms, which he testified began in 2002, because Stivers worked for a number of years since that time, and failed to undergo any mental health treatment or take any medication for his symptoms. (*See id.* at 17.)

Although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 404.1529(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand

16

where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that she considered the entire evidentiary record." *Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y. June 25, 2012) (internal quotation marks and citation omitted); *see Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y. Aug. 14, 2012) (stating that the 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) factors are included as "'examples of alternative evidence that may be useful [to the credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's finding'") (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y. 2004)).

Finally, Stivers' argues that the ALJ improperly dismissed his claims of probable undiagnosed chronic obstructive pulmonary disease (COPD) because she inaccurately stated that Stivers did not report any breathing problems at his consultative examination. (*See* Dkt. No. 13 at 16.) Even if the ALJ misread Stivers' complaints to Dr. Ganesh, upon examination by Dr. Ganesh, Stivers chest and lungs were normal and clear to auscultation, and the ALJ relied on Dr. Ganesh's opinion in fashioning her RFC determination. (*See* Tr. at 15-16, 305.) Further, the ALJ explained that she accounted for Stivers' complaints of shortness of breath in her RFC

17

determination by limiting Stivers to light work. (*See id.* at 17.) Thus remand is not required. *Cf. Horan v. Astrue*, 350 F. App'x 483, 484-85 (2d Cir. 2009) (explaining that when an ALJ's credibility determination is based largely on factual errors, the determination is not supported by substantial evidence and must be remanded).

### D. <u>Vocational Expert</u>

Finally, Stivers claims that the hypothetical question posed to the vocational expert (VE) was incomplete due to errors in the ALJ's RFC and credibility determinations, and the ALJ's failure to include all of the limitations suggested by Dr. Shapiro's opinion. (*See* Dkt. No. 13 at 17-18.) Further, Stivers argues that the VE's testimony was inconsistent with the dictionary of occupational titles (DOT). (*See id.* at 18-19.) The court does not agree.

As discussed above, the ALJ's RFC and credibility findings were legally sound and are supported by substantial evidence. Although the hypothetical question did not include a verbatim recitation of Dr. Shapiro's limitations, it appropriately encompassed the restrictions contained in the ALJ's RFC analysis. (*See* Tr. at 14, 55-56.) Stivers contends that, because the VE did not provide DOT codes for the occupations that he

opinied Stivers could perform, his testimony was inconsistent with the DOT. (*See* Dkt. No. 13 at 18.) This argument is meritless. The ALJ specifically asked the VE if his testimony was consistent with the DOT and the VE answered affirmatively. (*See* Tr. at 57.) Moreover, Stivers' counsel had ample opportunity to object or cross-examine the VE about the relevant DOT codes and any alleged conflict, but chose not to do so. (*See id.* at 56-57.) Stivers further argues that one of the three jobs identified by the VE is incompatible with Stivers' limitations. (*See* Dkt. No. 13 at 19.) However, as the finding of one job is sufficient to demonstrate that there is other work that Stivers could perform, Stivers' claim that the VE's testimony did not constitute substantial evidence supporting the ALJ's finding that other work existed for him is meritless. *See* 20 C.F.R. § 404.1566(b); *Martin v. Comm'r of Soc. Sec.,* No. 5:06-CV-720, 2008 WL 4793717, at *2 (N.D.N.Y. Oct. 30, 2008).

## E. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Stivers' Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 2, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court